August 29, 2019

Jessica Dark
Pierce, Couch, Hendrickson, Baysinger & Green, L.L.P
1109 N. Francis Ave.
Oklahoma City, OK, 73126

RE:  Prince, Administrator of Estate of Wayne Bowker, deceased vs Chris Bryant, Sheriff of Carter County, et al.

Dear Ms. Dark,

The following is my written report on the above referenced case.  My opinions are based on my 18 years of cumulative medical experience having trained in Internal Medicine and Cardiovascular Disease.  I also completed residency in pediatrics and my undergraduate degree is in psychology.  I have given expert opinion frequently after reviewing cases for various law firms on a multitude of differing cases.  I am currently boarded in both Cardiovascular Disease and Interventional cardiology.  I am in good standing with American College of Cardiology and am currently the Medical Director of Cardiology at Integris Deaconess hospital and Director of the Heart Catheterization Laboratories at both Integris Deaconess and Integris Canadian Valley hospitals.

**In formulating my opinions, I have reviewed the following documents/materials:**

1. CCSO Inmate Medication Logs for Wayne Bowker
2. Jail Incident Report dated June 30, 2016
3. OSBI Case Master Report
4. OSBI Report
5. Medical Examiner's Report dated August 9, 2016
6. EMS Pre-Hospital Care Report
7. CCSO Inmate Medical File for Wayne Bowker
8. Jail Administrator's File for Wayne Bowker
9. Records from Oklahoma Heart Hospital
10. Records from Hillcrest Medical Center, Tulsa
11. CCSO Inmate File for Wayne Bowker
12. Radiology films from Mercy
13. Autopsy Report
14. Records from Mercy Hospital Ardmore, OK
15. Records from Mercy Hospital NW Arkansas
16. Records from Mercy Clinic Bentonville, AR
17. Records from Mercy Clinic Lancashire, AR
18. Records from Mercy Clinic Wound Care Rogers, AR

19. Records from Mercy Clinic West Redbud, Rogers, AR
20. Siloam Springs 2013 records
21. Death certificate
22. NW Springdale Medical Center records 2013
23. Phone recordings between Mr. Bowker and his mother from jail
24. Video from the jail just prior to Mr. Bowker's death
25. Expert statement from Dr. Richard M. Sobel
26. Deposition testimony of Dr. Richard M. Sobel

**Statement of Opinions:**

1. There was no way to have predicted or prevented the death of Mr. Wayne Bowker. Mr. Bowker had long history of psychiatric problems that had been present for years prior to his incarceration. His mental illness manifested with physical signs which previously had been extensively evaluated and in no way contributed to his death.
2. In my opinion, the most likely cause of Mr. Bowker's death is an arrhythmic event leading to sudden cardiac death (SCD).
3. Sudden cardiac death in the vast majority of cases is an unpredictable event. Mr. Bowker displayed no signs that would have signaled he was in eminent danger from SCD.
4. There is no objective evidence that Mr. Bowker died from neglect (i.e. no significant skin breakdown or other abnormalities were noted in the autopsy report).
5. Given Mr. Bowker had received medical evaluation in a hospital setting on multiple occasions in the past and recently just before his death and had not shown any imminent danger by any objective means (vital signs, laboratory, imaging, etc.), there is no reason to believe the staff in the jail should have felt there was a risk to his life requiring urgent reevaluation in a hospital setting.
6. The diagnosis of catatonia (which has been argued to be the cause of Mr. Bowker's death) without frank immobility to the point of paralysis is difficult even for most medical professionals to diagnose (as evidenced by Mr. Bowker never being diagnosed with catatonia in the past despite having essentially the same symptoms). There are multiple reports that Mr. Bowker was ambulating by himself including the fact he was witnessed on the toilet just prior to his death. Therefore, it is unreasonable to expect a lay person to come to the conclusion Mr. Bowker was suffering from a catatonic state.
7. Likewise, It is impossible given his constellation of symptoms to differentiate a multitude of other conditions with similar presentation. One could just as easily assume Mr. Bowker was suffering from chronic depression (which he had a known diagnosis of) with lethargy, malingering (which had also been suggested in the past) or just suffering from akathisia from his medications (again which he was diagnosed with from the ER physicians prior to his death). Nothing in the evidence provided or his symptoms would allow for such a distinction to be made.
8. Dr. Sobel makes the argument Mr. Bowker was suffering from "malignant catatonia" which lead to his death. To my knowledge there are no signs or symptoms that would distinguish this supposedly more lethal form of catatonia from any other form of

catatonia. I believe this is a fairly arbitrary label used sparingly in the medical literature because it is impossible to say if or when this supposed more deadly form of catatonia presents as opposed to regular run of the mill catatonia. As such "malignant catatonia" is not recognized as one of the subtypes of catatonia in the DSM V (Diagnostic and Statistical Manual of Mental Disorders).

9. Catatonia or so-called "malignant catatonia" as a primary cause of death is controversial. There are no conclusive studies on the subject and are mostly reported as case reports in the literature. Outside of an underlying concurrent medical condition caused by the catatonic state such as extreme malnutrition, decubitus ulcers with subsequent infection/sepsis, rhabdomyolysis, electrolyte imbalances or DVT with subsequent pulmonary embolus, there is no proven underlying physiologic reason for death in catatonic patients. If this were the case, patients who live in a chronic vegetative state whom we know can survive for many years would die without cause. Regardless, as discussed above, the detention staff would not be able to make a diagnosis of catatonia based on his symptoms.
10. Mr. Bowker's long standing chronic psychiatric issues in no way constituted a medical emergency. Treatment of bipolar disorder even if lapsing into catatonia in and of itself is not a life-threatening emergency and may require days to months or even years of treatment for control of symptoms.
11. Concerning the claim by Dr. Sobel the staff at the jail in some way neglected the patient to cause "unnecessary and wanton infliction of pain" appears to be in direct opposition to the behavior the staff displayed towards Mr. Bowker. Not only did they take him to the Emergency Room on three separate occasions (5/18/16, 6/5/16 and 6/11/16) for various issues (none of which found any objective evidence indicating a detectable threat to his life), but moved him to a more safe environment when other inmates were becoming frustrated with his continued inability to take care of his own basic hygiene. In addition, there is clear video evidence the guards treated him kindly by helping him to the showers and assisted in cleaning him.
12. Based on the reports of symptoms Mr. Bowker displayed in the days leading up to the moment he was found unconscious, there was nothing that would constitute a medical emergency which would have been a trigger for the detention staff to return Mr. Bowker to the emergency room.

Charge rates per hour:
    For record review/testimony: $500/hour


s/ Tim Daly                                      Dated August 29, 2019
Tim Daly, MD, FACC

# Tim Daly, MD, FACC

Baptist Medical Plaza

3433 Northwest 56th St.

Building B, Suite 660

Oklahoma City, Oklahoma 73112

Summary:

Currently I am a Board Certified Interventional Cardiologist in good standing employed by Integris Cardiovascular Physicians in Oklahoma City, Oklahoma. I am the Catheterization Laboratory Director for Integris Canadian Valley (Yukon)

Employment:

1. Integris Cardiovascular Physicians – Oct. 2011 to present
2. Deaconess employed physician – Aug. 2009 to Oct. 2011

Education:

1. Cardiology and Interventional Fellowship – July 2005 to June 2009
2. Internal Medicine/Pediatric Residency – July 2001 to June 2005
3. University of Oklahoma Medical School – Aug. 1997 to May 2001
4. Epidemiology Masters Program – Aug 1996 to May 1997
5. University of Oklahoma (B.A. in psychology) – Aug. 1991 to May 1995

Licenses and Certifications:

1. Board Certification in Interventional Cardiology
2. Board Certification in Cardiovascular Disease
3. Board Certification in Internal Medicine

Professional Societies:

1. Fellow in the American College of Cardiology

Publications:

1. <u>Real-time Ultrasound Guidance Facilitates Femoral Arterial Access and Reduces Vascular Complications: Femoral Arterial Access with Ultrasound trial (FAUST);</u> Seto AH, Abu-Fadel MS, Sparling JM, Zacharias SJ, Daly TS, Harrison AT, Suh WM, Vera JA, Aston CE, Winters RJ, Patel PM, Henebry TA, Kern MJ

    *JACC Cardiovasc Interv. 2010 Jul;3(7):751-8. Doi: 10.1016/j.jcin.2010.04.015*

2. <u>Defining the common femoral artery: insights from the femoral arterial access with ultrasound trial</u>; Seto AH, Tyler J, Harrison AT, Vera JA, Zacharias SJ, Daly TS, Sparling JM, Patel PM, Kern MJ, Abu-Fadel MS

    *Catheter Cardiovac Interv. 2017 Jun 1;89(7):1185-1192. Doi: 10.1002/ccd.26727. Epub 2016 Aug 27*